**Opinion issued November 6, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00582-CR

———————————

**DENISE PRESSLEY HOWARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 75th District Court
Liberty County, Texas\***
**Trial Court Case No. CR 29833**

---

\*  Pursuant to its docket equalization authority, the Supreme Court of Texas transferred the appeal to this Court. *See* Misc. Docket. No. 13-9097 (Tex. Jul. 9, 2014); *see also* TEX. GOV'T CODE ANN. § 73.001 (West 2013) (authorizing transfer of cases).

## MEMORANDUM OPINION

Appellant Denise Pressley Howard (a/k/a Denise Winell Dirden) was charged with felony theft of property over the value of $200,000. Following a jury trial, appellant was convicted of the lesser-included offense of theft of property over the value of $20,000 but less than $100,000. TEX. PENAL CODE ANN. § 31.03(e)(5) (West Supp. 2014). The trial court assessed punishment at five years' confinement. On appeal, appellant contends that the evidence is legally insufficient to support her conviction. She further argues that the State violated her right to due process by failing to correct false and misleading testimony, and by failing to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). We affirm the trial court's judgment.

### Background

Appellant worked as the office manager for Martin Wood Co., a timber company owned by Isaac "Ike" Martin III and located in Cleveland, Texas. Martin Wood purchases timber directly from loggers and wholesales the product to local sawmills. As part of her duties as office manager, appellant routinely wrote company checks to pay the loggers.

In 2009, Martin noticed a large disparity in the value of checks written by appellant in December 2008 relative to the value of lumber purchased. Following an internal audit, Martin suspected that appellant had been writing company checks

without authorization since November 2007. Seeking to charge appellant with theft, Martin presented the findings of his audit to the Cleveland Police Department.

After an investigation by the local police and the United States Secret Service concluded that appellant had written unauthorized checks from November 2007 to March 2009, the State charged appellant with theft of property valued greater than $200,000.

At trial, the State offered into evidence 68 Martin Wood checks, many of which were signed by appellant. Others were stamped with Martin's signature. Most of the checks were written to a variety of payees, including appellant, her son Trinity, her boyfriend, and several retail establishments. Some were written to "cash" or used to purchase cashier's checks. Martin testified that the checks represented unauthorized expenditures. Trinity Howard testified that he had written and cashed some of the checks at appellant's request, and that he always gave the proceeds to her. Cumulatively, the checks represented over $100,000 in debits.

Following a jury trial, appellant was convicted of the lesser-included offense of theft of property over the value of $20,000 but less than $100,000. She was sentenced to five years in prison, and she now appeals her conviction.

**Analysis**

Appellant argues that the State violated her right to due process by failing to correct false testimony that led to her conviction, and by failing to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). She further argues that the evidence is legally insufficient to support her conviction.

## I.    State's alleged use of false testimony

The use of material false testimony to obtain a conviction is a violation of a defendant's due-process rights under the Fifth and Fourteenth Amendments to the United States Constitution, regardless of whether the State does so knowingly or unknowingly. *See, e.g.*, *Ex parte Robbins*, 360 S.W.3d 446, 459 (Tex. Crim. App. 2011). To constitute false testimony, the testimony need not be criminally perjurious. *Ex parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011). Nor is a witness's or the State's good or bad faith relevant to the analysis. *Ex parte Weinstein*, 421 S.W.3d 656, 666 (Tex. Crim. App. 2014). "The question is whether the testimony, taken as a whole, gives the jury a false impression." *Ex parte Chavez*, 371 S.W.3d 200, 208 (Tex. Crim. App. 2012). False testimony is material only if there is a "reasonable likelihood" that it affected the judgment of the jury. *Weinstein*, 421 S.W.3d at 665; *Chavez*, 371 S.W.3d at 206–07.

4

"If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). The "reasonable likelihood" standard embodied within the test to determine whether material false testimony resulted in a due-process violation has been held to be equivalent to the Rule 44.2(a) standard for constitutional error, which requires the State to prove beyond a reasonable doubt that the error did not contribute to the adverse verdict. *Ghahremani*, 332 S.W.3d at 478.

Here, appellant contends that the State used the material false testimony of Trinity Howard and Ike Martin to obtain her conviction.

**A. Trinity Howard**

Trinity's testimony concerned the occasions when he had written or cashed Martin Wood checks without authorization. He explained that he "took some money" from Martin Wood, and that he initially told investigators that appellant was not involved. Trinity and his father reached an agreement with Ike Martin that the value of the checks would be repaid and no charges would be filed against Trinity. At trial, however, Trinity testified contrary to his prior statement that appellant told him to write the checks, and that he had lied to the investigators at her request. When asked how much money he stole, Trinity denied taking any.

5

Trinity maintained at trial that he previously lied to the investigators, but he was "telling the truth now."

Appellant contends that Trinity's testimony was materially false because his statement that he did not take any money was inconsistent with his prior statements to investigators and the alleged agreement with Ike Martin. But despite the apparent contradiction, nothing in the record on appeal demonstrates that Trinity's trial testimony was false. Although it was inconsistent with his prior statements, he maintained that his testimony at trial was the true version of events.

Appellant did not object during trial that Trinity's inconsistent testimony violated her due-process right not to be convicted on the basis of material false testimony. Her written motion for new trial did not articulate this issue either, and Trinity was not mentioned by name at the evidentiary hearing on the motion for new trial. *See* TEX. R. APP. P. 33.1. Given Trinity's unequivocal statement that his testimony at trial was the true version of events, the failure to raise a contemporaneous objection, and the failure to raise the issue in the motion for new trial, appellant has provided us no record upon which we could conclude on direct appeal that she was denied due process because Trinity's testimony gave the jury a false impression. In other words, the appellate record reveals no constitutional error in this regard because it does not establish that Trinity's testimony was false, much less that it was materially false.

6

## B. Ike Martin

Ike Martin's testimony concerned digital accounting files that were allegedly missing following a 2009 burglary of the Martin Wood offices. During direct examination, Martin testified that the company's records were stored on a desktop computer that was stolen during the burglary. He explained that his accountant performs her duties with information furnished from the company:

Q: To perform—to do the financial statements and tax statements, does she rely on information provided by your office?

A: That's all she relies on is information provided by my office.

Q: And how exactly is that information furnished?

A: The majority of it in recent years has been with a computer stick or information stick. I'm not sure the correct name. It's a little device you plug into the computer and your information is downloaded onto this device and it's delivered—I deliver it to her or have it delivered to her office in Conroe.

Q: Was this the same way information was provided in the years 2007, 2008, and 2009?

A: Yes.

Q: Up through the first quarter of 2009?

A: Up to the present date, yes.

On cross-examination, defense counsel questioned Martin about the robbery and records subsequently turned over to the accountant.

Q: Mr. Martin, I'm somewhat confused because in '09 when all these computers were stolen, all the information is on these computers, correct, sir?

A;     Yes, sir.

Q:     But yet you have this information today, don't you, sir?

A:     I do.

Q:     And if it was stolen as you have represented to the jury and yet you have it today, where did that information come from that was on those computers that were stolen?

A:     Where did the information come from? I didn't understand your question.

Q:     Well, you just told this jury that your computers and all the information on them were stolen sometime in April or May, June of '09, correct sir?

A:     That's correct.

Q:     All right. And all the information on them is now gone, correct, sir?

A:     Well, the information that was gone on the computer at the time, yes sir, it would be gone.

Later, when asked if he was trying to insinuate that appellant stole the computers, Martin agreed that he was.

Appellant asserts that Martin's testimony that records contained on Martin Wood computers were stolen in a burglary was materially false because it conflicted with the fact that the accountant received the records. Yet like Trinity's testimony, despite conflicts in the evidence nothing in the record on appeal demonstrates that any particular aspect of Martin's testimony was false. Though Martin stated that the accountant received records for the same period covered by

the stolen files, that fact does not conflict with the testimony that such records were also present on and thus stolen along with the computers from the office. Nor does the record establish that Martin falsely alleged the theft of the computers.

As with Trinity Howard's testimony, appellant did not object during trial that Ike Martin's apparently inconsistent testimony violated her due-process right not to be convicted on the basis of material false testimony. The motion for new trial did not identify this issue either. *See* TEX. R. APP. P. 33.1. Instead, the written motion alleged that Martin "secreted" records which appellant contended would have cleared her of the State's allegations. At the evidentiary hearing on the motion, the trial judge articulated his understanding that the gravamen of the motion was "newly discovered evidence," and defense counsel agreed.

Given Martin's clarification that accounting records were "stolen" along with computers that contained the information, but some of those records were also stored on other media, the failure to raise a contemporaneous objection, and the failure to raise the issue in the motion for new trial, appellant has provided us no record upon which we could conclude on direct appeal that she was denied due process because Martin's testimony gave the jury a false impression. In other words, the appellate record reveals no constitutional error in this regard because it does not establish that Martin's testimony was false, much less that it was materially false.

In sum, because appellant has not demonstrated the falsity of the testimony of Trinity Howard or Ike Martin, we overrule her first issue.

## II. State's alleged suppression of exculpatory evidence

In her second issue, appellant contends that the trial court erred in denying her motion for new trial based on an allegation that exculpatory records were withheld by the State in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963).

We review a trial court's ruling on a motion for new trial for an abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it is within the zone of reasonable disagreement. *Id*. A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.*

The suppression of evidence favorable to a defendant violates the defendant's due-process rights if the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. *Brady*, 373 U.S. at 87, 83 S. Ct. at 1196–97. To establish a *Brady* violation, a defendant must show: (1) the State suppressed evidence; (2) the suppressed evidence is favorable to the defendant; and (3) the suppressed evidence is material. *Little v. State*, 991

S.W.3d 864, 866 (Tex. Crim. App. 1999). The third prong, materiality, requires that the State's failure to disclose the favorable evidence prejudiced the defendant. *Banks v. Dretke*, 540 U.S. 668, 691, 124 S. Ct. 1256, 1272 (2004).

Appellant does not assert that the State violated *Brady* by suppressing exculpatory evidence in its possession. Rather, she claims that she made numerous requests to the State for electronic records allegedly possessed or controlled by Ike Martin that, if produced, would have been exculpatory. *Brady* does not, however, "require prosecuting authorities to disclose exculpatory information to the defendants that the State does not have in its possession and that is not known to exist." *Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006) (quoting *Hafdahl v. State*, 805 S.W.2d 396, 399 (Tex. Crim. App. 1990)). Furthermore, the State is not required to seek out exculpatory evidence independently on appellant's behalf. *Id*. Consequently, appellant has not demonstrated that the State suppressed the supposedly favorable records because she has not established that the State possessed the records.

We overrule appellant's second issue.

## III. Sufficiency of the evidence

In her third issue, appellant argues that the evidence is legally insufficient to support her conviction.

When evaluating a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

In arguing her legal sufficiency issue, appellant does not specifically argue how the evidence is insufficient, such as by identifying a particular element of the offense which allegedly lacks evidentiary support. Instead, she contends that certain testimony at trial was obviously untruthful, and that other evidence was withheld. Specifically, she asserts that "[t]he testimony of Trinity Howard and Isaac Martin . . . was false and intentionally dishonest. The malicious intentions of both Isaac Martin and Trinity Howard are glaringly obvious from the outset of the trial, and include not only false testimony, but fabrication of evidence, intentional hiding or secreting of evidence, and fraud." Such an argument constitutes insufficient briefing of a challenge to the sufficiency of the evidence, and as such it presents nothing for review. *See McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997); TEX. R. APP. P. 38.1(i). Because the legal-sufficiency issue is nothing

more than a restatement of her other points regarding false testimony and withholding of evidence, we overrule appellant's third issue.

## Conclusion

The trial court's judgment is affirmed.

Michael Massengale
Justice

Panel consists of Justices Massengale, Brown, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).